1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   STEPHEN MACK,

11          Petitioner,              No. CIV S-02-1539 GEB JFM P

12       vs.

13   G. M. GALAZA, Warden, et al.,

14          Respondents.            FINDINGS & RECOMMENDATIONS

15   _____/

16          Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 1999 conviction on

18   charges of second-degree burglary and forgery.  He seeks relief on the grounds that: (1) there was

19   insufficient evidence to support his conviction; (2) he received ineffective assistance of trial and

20   appellate counsel; (3) his right to confront the witnesses against him was violated by the

21   admission of hearsay evidence; (4) the admission of evidence of uncharged conduct violated his

22   right to a fair trial; and (5) his sentence constitutes cruel and unusual punishment.  Upon careful

23   consideration of the record and the applicable law, the undersigned will recommend that

24   petitioner's application for habeas corpus relief be denied.

25   /////

26   /////

1

## PROCEDURAL AND FACTUAL BACKGROUND[1]

[Petitioner] Stephen Mack was charged with four felony counts arising out of an alleged scheme to defraud retail stores: counts 1 and 3, second degree burglary (Pen. Code, § 459; all further undesignated section references are to the Penal Code); count 2, forgery (§ 470, subd. (d)); and count 4, theft with a prior theft conviction (§ 666).[2]  It was alleged that [petitioner] had suffered two prior serious felony convictions for purposes of the three strikes law (§ 667, subds. (b) - (i)) and had served one prior prison term (§ 666.5, subd. (b)).  The trial court bifurcated the trial of [petitioner's] prior convictions.

The jury found [petitioner] guilty on counts 1 through 3 and not guilty on count 4.  After [petitioner] waived jury trial on the priors, the trial court granted the prosecutor's motion to dismiss the prior prison term allegation, but found that [petitioner] had two strikes. The trial court sentenced [petitioner] to consecutive terms of 25 years to life on counts 1 and 3 and to a stayed term of 25 years to life on count 2.  (§ 654.)

* * *

Around 2:00 p.m. on November 6, 1998, [petitioner] entered the Van Heusen factory outlet store in Vacaville with clothes he wanted to exchange, but no receipt.  The items included women's clothing.  Tamara Hedrick, the assistant store manager, who dealt with [petitioner], found it unusual for a man to be bringing in women's clothing to exchange.

[Petitioner] picked out other items to exchange for those he had brought in.  Because the new items' total price was less than that of the old, Hedrick gave [petitioner] a credit for $20.35.  She prepared a three-part exchange form, wrote "no receipt" across the front, then gave the form to [petitioner] to fill out his part.

[Petitioner] filled out the form, signing it "Shawn C. McKnight" and giving no telephone number.[3]  He claimed he was returning the items because they were the wrong size.  In accordance with store procedure, Hedrick gave [petitioner] the white copy of the form.

---

[1]  This statement of facts is taken from the July 18, 2000, opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 1-9, appended as Exhibit C to Respondent's January 13, 2003, Motion to Dismiss (MTD).

[2]  Five counts were originally alleged.  The People dismissed the original count 4 (forgery) for insufficient evidence in midtrial, and the original count 5 was renumbered as count 4.

[3]  No evidence was introduced to show whether a person by that name existed.

2

[Petitioner] seemed "fidgety," "jumpy," and in a hurry to leave all the time he was in the store.

When shown the white copy of the form at trial, Hedrick noted that it had been altered.  On the front, someone had written "customer show me original cash."  The words "no receipt" which she had written were crossed out and the words "with receipt" written underneath.  For a clerk to fill out a form that way would have violated store policy, because a clerk who gets a receipt from a customer is required to add identifying details about the receipt.

Counts 1 and 2 (burglary, forgery)

At around 8:45 p.m. on the same day, November 6, 1998, [petitioner] entered the Van Heusen factory outlet store at a mall in Folsom; he was carrying two bags with the store logo and a bag with the logo of American Outpost, a store located next door to the Van Heusen store. [Petitioner] put the Van Heusen bags and the altered receipt from the other Van Heusen store on the counter.  He told Lori Holzer, the store manager, that he wanted to return the items in the bags for cash, then started walking around the store.

Examining the receipt, detecting the written alterations and the absence of one part of the form, and observing that the earlier transaction had taken place just a few hours before, Holzer became suspicious.  She told [petitioner] she could not give him cash back and said she would call the Vacaville store to straighten out the situation. [Petitioner] said that was not necessary; he would settle for an exchange.  Holzer hung up the phone.

[Petitioner] continued walking around the store, looking for items to pick up, but appeared unconcerned about their sizes.  After he brought some things to the counter and Holzer started ringing them up, [petitioner] left, announcing he would be right back.  He returned, accompanied by Dwayne Saunders.[4] [Petitioner] said he was going to the American Outpost Store, picked up the American Outpost bag he had brought in, and left Saunders to complete the transaction; Saunders paid the cash balance on the new items, then left.

Holzer went to the Izod store in the mall and called the police.  She told her clerk what had happened and asked the clerk to notify the employees in the American Outpost store.  On returning to her store, Holzer found Saunders, who said he wanted to exchange the items [petitioner] had just acquired because they were not Saunders's size.  Holzer conducted the exchange with Saunders.

---

[4]  Saunders was charged as a codefendant, but was dismissed from the case in midtrial when the trial court granted his section 1118.1 motion.

Counts 3 and 4 (burglary, theft)

[Petitioner] entered the American Outpost store in the mall, where Nicole Blackburn, the assistant manager, was working. She recognized [petitioner] because she had conducted an exchange for him the day before; at that time he identified himself as "Steve Saunders."

[Petitioner] told Blackburn he wanted to exchange a jacket he had obtained during the previous day's exchange, as well as some shirts he had bought at the American Outpost store in Vacaville, for a pair of corduroy pants and a corduroy shirt. He walked around the store and tried on a couple of things before he brought the pants and shirt to the counter. His mood appeared "upbeat."

As Blackburn processed the exchange, another employee summoned her to warn her about the events in the Van Heusen store. [Petitioner] began to look nervous as Blackburn left the counter area. When Blackburn came back, she took her time about completing the processing. In the meantime, Sergeant Michael Hood of the Folsom Police Department arrived and arrested [petitioner]. Blackburn then cancelled the exchange transaction.[5] Returning to the store, Sergeant Hood searched some American Outpost bags left in front of the counter; Blackburn had not seen where the bags came from. They contained clothing, apparently in [petitioner's] size, that Blackburn had not seen before. She concluded that [petitioner] had either brought the items in with him or had taken them intending to leave without paying for them.

According to Sergeant Hood, he saw [petitioner] first trying to leave the store carrying two or three bags, then going back in after spotting Hood. Hood testified that Blackburn told him [petitioner] had asked for cash back and had taken an American Outpost bag from the register area.

After arresting [petitioner], Sergeant Hood searched him and found several store receipts, including one showing a cash refund from a clothing store. [Petitioner's] car contained more receipts showing refund transactions, all for clothing. The receipts all proved to have false or nonexistent addresses, which had apparently been provided by [petitioner] when he obtained the receipts.[6]

---

[5] Blackburn testified that she had been terrified of [petitioner] during the transaction. However, several witnesses recounted that when Blackburn talked to them about the incident shortly afterward she did not seem disturbed or mention any fear of [petitioner].

[6] In his statement of facts, defendant refers to these addresses as " purportedly supplied by the customer." However, he cites no evidence showing that anyone other then he could have supplied them or would have been likely to do so in the course of ordinary retail transactions.

[Petitioner's] car also contained several bags of new merchandise from various stores and 45 empty bags from different retail outlets. An investigating officer testified that the number and like-new appearance of the bags suggested that they were "booster bags," i.e., bags to be brought into stores and surreptitiously filled with merchandise which the user did not intend to pay for.

Dwayne Saunders testified as a witness after his dismissal as a defendant. He stated that [petitioner], an acquaintance, invited Saunders in October 1998 to accompany him to Office Max where [petitioner] wanted to return a caller ID box, then asked Saunders to do the return because [petitioner] had exchanged items there before. On Saunders's refusal, [petitioner] returned the item himself, getting cash back.[7]

On November 6, 1998, according to Saunders, [petitioner] asked Saunders to go with him to Folsom; Saunders went, even though he was suspicious about the Office Max transaction. [Petitioner] said he would buy Saunders a pair of pants. When Saunders noticed that [petitioner] had bags of clothing with him, [petitioner] explained that he was going to return them on behalf of a relative. At the Folsom mall, Saunders waited in [petitioner's] car until [petitioner] came back, asked him to pick out clothing in the Van Heusen store, then went to the American Outpost store. After Saunders had picked out clothing, completed the transaction, and returned to the car, he realized he had bought the wrong size and went back to the store to exchange it. When Saunders and [petitioner] were arrested, [petitioner] told him not to worry because [petitioner] had not taken anything out of the store and he had been through all of this before.

Robin Mallory, the assistant manager of a Petco store in Davis, testified that on November 2, 1998, [petitioner] entered her store and tried to make a return of merchandise, requesting cash back. Mallory told him that he could only exchange the merchandise for other merchandise because he had no receipt. He made an exchange and received $1.04 back. He gave an address which turned out not to exist.

Prior offenses allegedly showing common scheme, plan, or design

On May 4, 1993, a store security employee at Nordstrom in Arden Fair Mall saw [petitioner] try to exchange items of clothing. While the clerk assisting him was looking elsewhere, [petitioner] took a pair of shorts from a nearby rack, approached another clerk, and obtained a cash refund. Store security apprehended [petitioner], who asserted that he needed the money for food.

---

[7] When [petitioner] and Saunders were arrested on November 6, 1998, Saunders had the Office Max receipt on him. The receipt had been issued to a "Mr. and Mrs. Jones."

On August 4, 1994, [petitioner] was observed at Mervyn's on Florin Road in Sacramento picking up a stuffed toy animal, then shortly afterward presenting a receipt and getting a refund for the toy. A store detective approached [petitioner] and identified himself. [Petitioner] fled but was apprehended.

On March 28, 1997, a loss prevention agent at Macy's in downtown Sacramento saw [petitioner] enter the store with a pair of Lee's denim jeans which he tried to exchange for cash; the agent thought the Jeans came from a discount store. Later, [petitioner] went to the men's department and exchanged the jeans for underwear and cash. When [petitioner] was detained, he called himself an "exchanger."

The Macy's agent found a label from Ross Stores in [petitioner's] possession, but no receipt. The label was for Lee's denim jeans of the same size as those [petitioner] exchanged, but Ross sold them for $8 less than Macy's. According to the Macy's agent, Macy's had a policy of refusing to exchange items from discount stores, even if Macy's sold the same items.

(People v. Stephen Mack, slip op. at 1-9.)

ANALYSIS

I. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at

/////

1  different result.  Early v. Packer, 573 U.S. 3, 8 (2002) (quoting Williams v. Taylor, 529 U.S. 362,

2  405-406 (2000)).

3          Under the  "unreasonable application" clause of section 2254(d)(1), a federal

4  habeas court may grant the writ if the state court identifies the correct governing legal principle

5  from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

6  prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

7  simply because that court concludes in its independent judgment that the relevant state-court

8  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

9  application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

10  (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

11  question, is left with a 'firm conviction' that the state court was 'erroneous.'")

12          The court looks to the last reasoned state court decision as the basis for the state

13  court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court

14  reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

15  habeas court independently reviews the record to determine whether habeas corpus relief is

16  available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

17  II.  Petitioner's Claims[8]

18        A.  Sufficiency of the Evidence

19          Petitioner's first claim is that the evidence at trial was insufficient to support his

20  convictions because the testimony of Officer Hood was false, inconsistent and not credible.

21          At the time petitioner was arrested, Officer Hood wrote a police report in which

22  he stated that Nicole Blackburn, the assistant manager at American Outpost, told him that

23  petitioner "had apparently picked up a bag at the cash register and placed merchandise into it"

24  and that Blackburn "knew exactly where the empty bag was picked up at."  (Reporter's

25  _____

26      [8]  This action is proceeding on petitioner's third amended petition, filed August 19, 2004.

1 Transcript on Appeal (RT) at 268, 269.)  At petitioner's trial, Officer Hood testified that he and

2 Blackburn went through the bags that petitioner was carrying at the time he was apprehended and

3 noticed that several items in one of the bags (pants and a shirt) were not listed on the sales

4 receipts.  (Id. at 423.)  Hood testified that "the bag that those items were in had come from the

5 counter next to the sales register cash register" and that Ms. Blackburn "knew exactly where that

6 bag had been prior to my contacting [petitioner]."  (Id.)  Similarly, Officer Hood testified that

7 Blackburn told him "that she knew exactly where the bag came from and pointed out to [him]

8 exactly where the bag came from."  (Id. at 423, 432.)  Ms. Blackburn, on the other hand, testified

9 that she did not actually see petitioner take the bag or put the clothes in the bag.  (Id. at 257, 268-

10 69.)  She testified that, for this reason, the statements in the police report which implied that she

11 had seen petitioner take clothing from the store were not entirely accurate.  (Id.)[9]

12        Petitioner argues that "[s]ince the only evidence that Petitioner committed any

13 crime was based [on] a false police arrest report, there was insufficient credible evidence as a

14 matter of law to support Petitioner's convictions."  (Am. Pet. at 7.)  He also argues that, without

15 the testimony of Officer Hood, there was insufficient evidence to sustain the judgment.

16        Petitioner's sufficiency of the evidence claim was raised for the first time in a

17 petition for writ of habeas corpus filed in the California Supreme Court.  (Ex. F to MTD.)  The

18 Supreme Court denied the claim with a citation to In re Lindley, 29 Cal.2d 709 (1947), In re

19 Dixon, 41 Cal.2d 756 (1953) and In re Swain, 34 Cal.2d 300, 304 (1949).  Respondents argue

20 that the California Supreme Court's opinion constitutes a procedural bar precluding this court

21 from addressing this claim on the merits.

22        As the United States Supreme Court has explained, in all cases in which a state

23 prisoner has defaulted his federal claim in state court pursuant to an independent and adequate

24

25        [9]  Blackburn also testified, however, that it was her belief petitioner did not intend to pay
for the shirt and pants found in the bag and that Officer Hood may have simply paraphrased other

26 things she told him in reaching the conclusions stated in the report.  (Id. at 271-73.)

state procedural rule, federal habeas review of the claim is barred unless the prisoner can

demonstrate cause for the default and actual prejudice as a result of the alleged violation of

federal law, or demonstrate that failure to consider the claims will result in a fundamental

miscarriage of justice.  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  The state rule is only

"adequate" if it is "firmly established and regularly followed."  Id.  (quoting Ford v. Georgia, 498

U.S. 411, 424 (1991)); Bennett v. Calderon, 322 F.3d 573, 583 (9th Cir. 2003) ("[t]o be deemed

adequate, the state law ground for decision must be well-established and consistently applied").

The state rule must also be "independent" in that it is not "interwoven with the federal law."

Park v. California, 202 F.3d 1146, 1152 (9th Cir. ), cert. denied, 531 U. S. 918 (2000) (quoting

Michigan v. Long, 463 U.S. 1032, 1040-41 (1983).  Even if the state rule is independent and

adequate, the claims may be heard if the petitioner can show: (1) cause for the default and actual

prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the

claims will result in a fundamental miscarriage of justice.  Coleman, 501 U.S. at 749-50.

Although the question of procedural default "should ordinarily be considered

first," a reviewing court need not do so "invariably," especially when it turns on difficult

questions of state law.  Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997); see also Busby v.

Dretke, 359 F.3d 708, 720 (5th Cir. 2004).  In order to determine whether petitioner's sufficiency

of the evidence claim is subject to a state procedural bar, this court would have to decide, among

other things, which state procedural rule(s), if any, bar this particular claim, when the state

procedural rule(s) became firmly entrenched, and whether the rule(s) have been consistently and

regularly applied.  In this case, this court finds that petitioner's claim can be resolved more easily

by addressing it on the merits.  Accordingly, this court will assume that petitioner's claim is not

defaulted and will address it on the merits.

As explained above, the California Supreme Court did not reach the merits of

petitioner's claim in this regard but denied it on procedural grounds.  Accordingly, there is no

state court decision on the merits of petitioner's claim.  When it is clear that a state court has not

reached the merits of a petitioner's claim, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Menendez v. Terhune, 422 F.3d 1012, 1025 (9th Cir. 2005); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).[10]   Accordingly, this court will review de novo petitioner's claim that there was insufficient evidence to support his convictions.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).  There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). See also Prantil v. California, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam).  "[T]he dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'"  Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318).  A petitioner for a federal writ of habeas corpus "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274, 1275 & n .13 (9th Cir. 2005).  In order to grant the writ, the habeas court must find that the decision of the state court reflected an objectively unreasonable application of Jackson and Winship to the facts of the case.  Id.

The court must review the entire record when the sufficiency of the evidence is challenged in habeas proceedings.  Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw

---

[10]  Under AEDPA, factual determinations by the state court are presumed correct and can be rebutted only by clear and convincing evidence.  Pirtle v. Morgan, 313 F.3d 1160, 1168 (9th Cir. 2002).

1   reasonable inferences from basic facts to ultimate facts." <u>Jackson</u>, 443 U.S. at 319.  If the trier of

2   fact could draw conflicting inferences from the evidence, the court in its review will assign the

3   inference that favors conviction.  <u>McMillan v. Gomez</u>, 19 F.3d 465, 469 (9th Cir.1994).  The

4   relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether

5   the jury could reasonably arrive at its verdict.  <u>United States v. Mares</u>, 940 F.2d 455, 458 (9th

6   Cir.1991).  "The question is not whether we are personally convinced beyond a reasonable doubt.

7   It is whether rational jurors could reach the conclusion that these jurors reached." <u>Roehler v.</u>

8   <u>Borg</u>, 945 F.2d 303, 306 (9th Cir. 1991).  The federal habeas court determines sufficiency of the

9   evidence in reference to the substantive elements of the criminal offense as defined by state law.

10  <u>Jackson</u>, 443 U.S. at 324 n.16; <u>Chein</u>, 373 F.3d at 983.

11          Under the facts presented at trial, and viewing the evidence in the light most

12  favorable to the prosecution, a reasonable trier of fact could have found beyond a reasonable

13  doubt that petitioner was guilty of burglary and forgery, as those crimes are defined by California

14  law.  Any possible misstatements in Officer Hood's police report and in his trial testimony with

15  respect to whether Nicole Blackburn saw petitioner place merchandise into a bag that he took

16  from the sales counter were effectively cleared up during the testimony of Ms. Blackburn.  In

17  addition, the court notes that petitioner was acquitted of the theft charge.  Because there was

18  sufficient evidence introduced at trial to support the verdict, this claim should be denied.

19          B.  <u>Admission of Hearsay Evidence/ Confrontation Clause</u>

20          Petitioner claims that the admission of evidence from store clerk Alissa Tidwell

21  concerning a hearsay statement made to her by another store clerk violated his rights to due

22  process and to confront the witnesses against him.  He argues that the hearsay evidence was "a

23  back door use of prior uncharged misconduct evidence."  (Traverse at 23.)

24          This claim was denied by the California Court of Appeal in a reasoned decision

25  on petitioner's direct appeal.  The factual background to the claim was fairly described by the

26  appellate court as follows:

1       Lori Holzer, the store manager at Van Heusen in Folsom, testified
2       that after [petitioner] left for the American Outpost store, Holzer
       asked an employee of another store (Izod) to go to American
       Outpost and explain what had happened while [petitioner] was at

2

3

4

5

6

7

8

(Opinion at 15.)

9

The California Court of Appeal concluded that this testimony was inadmissible

10

hearsay, and that the trial court erred by allowing it to be admitted into evidence over a defense

11

hearsay objection.  (Id.)  The court determined, however, that the error was harmless "under any

12

standard" because of the overwhelming evidence against petitioner.  (Id. at 15-16.)  The appellate

13

court also concluded that petitioner's claim of confrontation clause error was waived by trial

14

counsel's failure to object to the testimony on constitutional grounds.  (Id. at 16.)

15

Respondent contends that petitioner's claim in this regard is barred by his failure

16

to make a contemporaneous objection at trial and is foreclosed by the non-retroactivity doctrine

17

set forth in Teague v. Lane, 489 U.S. 288 (1989).  The court agrees that this claim appears to be

18

procedurally barred.  See Coleman v. Thompson, 501 U.S. 722, 747 (1991); Harris v. Reed, 489

19

U.S. 255, 264 n.10 (1989); Paulino v. Castro, 371 F.3d 1083, 1092-93 (9th Cir. 2004) (claim that

20

defendant's due process rights were violated by the trial court's failure to instruct sua sponte on

21

the definition of "major participant" procedurally barred because counsel failed to make a

22

contemporaneous objection to the instruction at trial).  Petitioner concedes that his trial counsel

23

failed to object to the testimony of Alissa Tidwell on the grounds that it violated his rights to due

24

process and confrontation.  (Traverse at 21.)  Pursuant to California law, a judgment may not be

25

reversed by reason of the erroneous admission of evidence unless "[t]here appears of record an

26

objection to or a motion to exclude or to strike the evidence that was timely made and so stated

1    as to make clear the specific ground of the objection or motion."  Cal. Evid. Code § 353 (a).

2    Petitioner has not demonstrated  that California's contemporaneous-objection rule as unclear,

3    inconsistently applied or not well-established, either as a general rule or as applied to him.

4    Bennett v. Mueller, 322 F.3d 573, 586 (9th Cir. 2003); Melendez v. Pliler, 288 F.3d 1120, 1124-

5    26 (9th Cir. 2002).  Petitioner has also failed to demonstrate that there was cause for his

6    procedural default or that a miscarriage of justice would result absent review of the claim by this

7    court.  See Coleman, 501 U.S. at 748; Vansickel v. White, 166 F.3d 953, 957-58 (9th Cir. 1999).

8           In any event, petitioner's claim lacks merit.  In Crawford v. Washington, 541 U.S.

9    36 (2004), the United States Supreme Court reaffirmed that only ex parte "testimonial"

10   statements are inadmissible under the Sixth Amendment's Confrontation Clause.  Id. at 68-69.

11   The statements made by the Izod store clerk to witness Alissa Tidwell were not "testimonial."

12   Id. at 51 (noting that "a casual remark to an acquaintance" is not a "testimonial statement").

13   Accordingly, the Confrontation Clause is not implicated by the admission of Alicia Tidwell's

14   testimony.

15          In addition, the United States Supreme Court has applied a harmless error test to

16   cases involving Confrontation Clause error.  Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986).

17   The standard to be used is whether the admission of the improper evidence had an effect on the

18   jury that was harmless beyond a reasonable doubt.  Id. at 680-81; Chapman v. California, 386

19   U.S. 18, 24 (1967); United States v. Bowman, 215 F.3d 951, 961 (9th Cir.2000) (evidence

20   erroneously admitted in violation of the Confrontation Clause must be shown harmless beyond a

21   reasonable doubt).  Whether an error is harmless beyond a reasonable doubt depends upon

22   factors such as (1) the importance of a witness's testimony in the prosecution's case, (2) whether

23   the testimony was cumulative, (3) the presence or absence of corroborating or contradictory

24   evidence, and (4) the overall strength of the prosecution's case.  Van Arsdall, 475 U.S. at 684.

25          The decision of the California Court of Appeal that the admission of Ms.

26   Tidwell's testimony was harmless "under any standard" is not an unreasonable determination of

13

1  the facts of this case.  The vague and inconclusive testimony of Alissa Tidwell could not have

2  had a negative impact on the jury verdict rendered here.  Accordingly, petitioner is not entitled to

3  relief on this claim.

4          C.  Evidence of Uncharged Conduct

5          Petitioner's next claim is that the trial court violated his right to due process when

6  it admitted evidence of petitioner's prior bad acts to show a common scheme, plan, or design

7  pursuant to Cal. Evid. Code § 1101(b).  The California Court of Appeal fairly described the

8  background to this claim as follows:

9              The trial court in limine admitted three of five uncharged prior acts
             offered by the prosecution for purposes of showing a common
10            design or plan, but excluded the other two under Evidence Code
             section 352.  The court explained that the acts it admitted – the
11            1993 Nordstrom incident, the 1994 Mervyn's incident, and the
             1997 Macy's incident – "ha[d] common threads . . . the taking of
12            items, stealing them, exchanging them, generating cash differences,
             merchandising credits, using those credits for store items, returning
13            stolen items, non-bought items, to Macy's returning them for cash,
             using different store personnel to effect confusion with a favorable
14            result to the [petitioner] . . . ."  The court expressly found that the
             prejudice from admitting those acts did not outweigh their
15            probative value under Evidence Code section 352 "to prove that
             the defendant's conduct in the present case at Van Heusen and
16            American Outpost were [sic] part of a plan of the defendant to
             either steal and return merchandise for cash or credit or to present
17            doctored or false receipts to these establishments, to defraud them
             for these same purposes."

18

19  Opinion at 12-13.

20          The appellate court concluded that this evidence was properly admitted pursuant

21  to California Evidence Code §§ 352 and 1101(b).  Opinion at 9-14.  The court stated:

22              Evidence that [petitioner] had a history of entering retail stores and
             attempting to acquire merchandise without paying for it, to present
23            items he had not paid for and "exchange" them for others, or to get
             cash back for such merchandise was highly probative of a common
24            design or plan to defraud retail stores by wrongfully obtaining cash
             or merchandise from them.  Evidence Code section 1101,
25            subdivision (b) does not require that the uncharged conduct and the
             charged offenses be identical in all pertinent respects in order to
26            prove a common design or plan.  It requires only a sufficient

14

degree of similarity to suggest a reasonable inference that because [petitioner] did the uncharged acts, he probably did the charged acts pursuant to such common design or plan.  (citation omitted).  The differences between the acts [petitioner] committed in each charged and uncharged incident mainly go to show that, when faced with different circumstances, [petitioner] improvised to meet the needs of the moment.  They do not negate the inference of an underlying common design or plan.

Defendant's Evidence Code section 352 argument is no more persuasive.  First, he asserts that the uncharged conduct was "extremely inflammatory" because there was no direct evidence that he stole any of the items he tried to exchange at Van Heusen or American Outpost, but there was direct evidence of stealing as to the uncharged acts.  This is a non sequitur. [Petitioner] cites no authority holding that direct evidence is more inflammatory than circumstantial evidence of the same type of crime, and there could be no such authority, since both kinds of evidence may suffice to prove a case.  In any event, [petitioner] was acquitted on the only count that directly charged theft; thus his claim of error fails for lack of prejudice.

[Petitioner] asserts that the jury would have been inclined to punish him for the past acts by convicting him of the present crimes.  However, since the jury was not told whether he had been punished for the past acts, [petitioner's] point is mere speculation.  In any event, [petitioner] makes no direct claim that the evidence as to the present crimes was insufficient for conviction; thus, he can show no prejudice from the mere possibility that the jury might have been inclined to punish him for the past acts.

[Petitioner] asserts that the 1993 incidents were too remote to be admitted under Evidence Code section 352.  However, he cites no authority holding that acts occurring less than 10 years before the charged offenses are "remote" for this purpose, and the law is otherwise.  (citation omitted).

[Petitioner] asserts that the uncharged-acts evidence consumed an "inordinate" amount of time because four witnesses were called and their testimony takes up 60 pages of reporter's transcript.  He cites no authority holding that this consumption of time is "inordinate"; thus, the point is waived.  (citation omitted).  In any event, 60 pages constitutes less than one-tenth of the reporter's transcript in this case, and we do not believe that amounts to an inordinate consumption of time for evidence as strongly probative as the uncharged-acts evidence here.

/////

/////

1

> In short, [petitioner] has failed to show an abuse of discretion
> under either Evidence Code sections 1101, subdivision (b) or 352
> from the admission of the uncharged-acts evidence.

2

3  (Id. at 12-14.)

4          The question whether evidence of prior uncharged acts was properly admitted

5  under California law is not cognizable in this federal habeas corpus proceeding.  Estelle v.

6  McGuire, 502 U.S. at 67.  The only question before this court is whether the trial court

7  committed an error that rendered the trial so arbitrary and fundamentally unfair that it violated

8  federal due process.  Id.  See also Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991)

9  ("the issue for us, always, is whether the state proceedings satisfied due process; the presence or

10  absence of a state law violation is largely beside the point").  A writ of habeas corpus will be

11  granted for an erroneous admission of evidence "only where the 'testimony is almost entirely

12  unreliable and ... the factfinder and the adversary system will not be competent to uncover,

13  recognize, and take due account of its shortcomings.'" Mancuso, 292 F. 3d at 956 (quoting

14  Barefoot v. Estelle, 463 U.S. 880, 899 (1983).  Evidence violates due process only if "there are

15  no permissible inferences the jury may draw from the evidence."  Jammal, 926 F. 2d at 920.

16  Even then, evidence must "be of such quality as necessarily prevents a fair trial." Id. (quoting

17  Kealohapauole v. Shimoda, 800 F.2d 1463 (9th Cir. 1986)).  For purposes of AEDPA, petitioner

18  must demonstrate that the California courts' rejection of his federal due process claim was

19  contrary to or an unreasonable application of "clearly established Federal law, as determined by

20  the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1);  Lockyer v. Andrade, 538 U.S.

21  63, 70-71 (2003).

22          The United States Supreme Court "has never expressly held that it violates due

23  process to admit other crimes evidence for the purpose of showing conduct in conformity

24  therewith, or that it violates due process to admit other crimes evidence for other purposes

25  without an instruction limiting the jury's consideration of the evidence to such purposes."

26  Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir. 2001), overruled on other grounds by

1  Woodford v. Garceau, 538 U.S. 202 (2003).  In fact, the Supreme Court has expressly left open

2  this question.  See Estelle v. McGuire, 502 U.S. at 75 n.5 ("Because we need not reach the issue,

3  we express no opinion on whether a state law would violate the Due Process Clause if it

4  permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime").

5  Accordingly, the state court's decision with respect to this claim was not contrary to United

6  States Supreme Court precedent.

7        In federal court, evidence of prior bad acts is admissible to show motive,

8  opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

9  Fed.R.Evid. 404(b).  To prove that the evidence is offered for one of these reasons, it is the

10  government's responsibility to show that the evidence (1) proves a material element of the

11  offense for which the defendant is now charged, (2) if admitted to prove intent, is similar to the

12  offense charged, (3) is based on sufficient evidence, and (4) is not too remote in time.  United

13  States v. Ramirez-Robles, 386 F.3d 1234, 1242 (9th Cir. 2004) (citing United States v. Beckman,

14  298 F.3d 788, 794 (9th Cir.2002)).  The government must also show that the evidence satisfies

15  Federal Rule of Evidence 403 in that its probative value is not outweighed by its prejudicial

16  effect.  Id.  The evidence of petitioner's prior acts was offered to prove the material elements of

17  motive and intent.  These are rational inferences the jury could draw from the challenged

18  evidence that is not constitutionally impermissible.  In addition, the evidence was similar to the

19  offenses charged, it was based on sufficient evidence, it was not too remote in time, and it was

20  not unduly inflammatory.  The probative value of the evidence was not outweighed by its

21  prejudicial effect.

22        Further, any error in admitting this testimony did not have "a substantial and

23  injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637.  See also

24  Penry v. Johnson, 532 U.S. 782, 793-96 (2001).  As described above, the evidence against

25  petitioner was substantial.  Any threat of improper prejudice flowing from the testimony was

26  mitigated by the trial court's instruction directing the jury to consider the uncharged acts

17

1   testimony only as it was relevant to show the existence of "a characteristic method, plan or

2   scheme in the commission of criminal acts similar to the method, plan or scheme used in the

3   commission of the offense in this case." (Clerk's Transcript on Appeal (CT) at 154.)  The jury is

4   presumed to have followed this instruction.  Old Chief v. United States, 519 U.S. 172, 196-97

5   (1997); United States v. Reed, 147 F.3d 1178, 1180 (9th Cir. 1998).

6          Accordingly, for all of these reasons, petitioner is not entitled to relief on this

7   claim.

8          D.  Ineffective Assistance of Trial and Appellate Counsel

9          Petitioner claims that both his trial counsel and his appellate counsel rendered

10  ineffective assistance.  These claims were raised for the first time in petitioner's application for a

11  writ of habeas corpus filed in the California Supreme Court.  (Ex. F to MTD.)  As explained

12  above, the Supreme Court denied all of petitioner's claims with a citation to In re Lindley, 29

13  Cal.2d 709 (1947), In re Dixon, 41 Cal.2d 756 (1953) and In re Swain, 34 Cal.2d 300, 304

14  (1949).  Respondents argue that the California Supreme Court's opinion constitutes a procedural

15  bar precluding this court from addressing these claims on the merits.  For the reasons described

16  in connection with claim A, this court will address petitioner's ineffective assistance of counsel

17  claims on the merits.

18          In order to prevail on a claim of ineffective assistance of counsel, petitioner must

19  show two things: an unreasonable error and prejudice flowing from that error.  First petitioner

20  must show that, considering all the circumstances, counsel's performance fell below an objective

21  standard of reasonableness.  Strickland v. Washington, 466 U.S. 688 (1984).  The court must

22  determine whether in light of all the circumstances, the identified acts or omissions were outside

23  the wide range of professional competent assistance.  Id. at 690.  "Review of counsel's

24  performance is highly deferential and there is a strong presumption that counsel's conduct fell

25  within the wide range of reasonable representation."  United States v. Ferreira-Alameda, 815

26  F.2d 1251 (9th Cir. 1986).

1    Second, petitioner must prove prejudice.  Strickland at 693.  To demonstrate

2    prejudice, petitioner must show that "there is a reasonable probability that, but for counsel's

3    unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A

4    reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.

5    The focus of the prejudice analysis is on "whether counsel's deficient performance renders the

6    result of the trial unreliable or the proceeding fundamentally unfair."  Lockhart v. Fretwell, 506

7    U.S. 364, 372 (1993).

8    The Strickland standards apply to appellate counsel as well as trial counsel.  Smith

9    v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).

10   However, an indigent defendant "does not have a constitutional right to compel appointed

11   counsel to press non-frivolous points requested by the client, if counsel, as a matter of

12   professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751

13   (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.  Otherwise, the

14   ability of counsel to present the client's case in accord with counsel's professional evaluation

15   would be "seriously undermined."  Id.  See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th

16   Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is

17   not even particularly good appellate advocacy.")  There is, of course, no obligation to raise

18   meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a

19   showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing

20   to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to demonstrate prejudice in this

21   context, petitioner must demonstrate that, but for counsel's errors, he probably would have

22   prevailed on appeal.  Miller, 882 F.2d at 1434 n.9.

23          1.  Trial Counsel

24          Petitioner argues that his trial attorney effectively abandoned him and presented

25   no defense at trial in retaliation for petitioner's refusal to enter into a plea agreement.  Petitioner

26   states that in order to induce him to accept the plea offer, his trial counsel falsely told him that

the prosecutor had a videotape which depicted petitioner stealing clothes from American

Outpost.  (Traverse at 15-16.)[11]  Petitioner also faults counsel for failing to challenge the

inaccuracies in Officer Hood's police report and failing to object on constitutional grounds to the

admission into evidence of Alissa Tidwell's hearsay statements.

        Petitioner has failed to demonstrate prejudice with respect to this claim.  There is

no evidence, aside from petitioner's unsubstantiated allegations, that trial counsel sabotaged or

abandoned petitioner's defense because of petitioner's failure to accept the plea agreement.  See

Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("presentation of conclusory allegations

unsupported by specifics is subject to summary dismissal"); Jones v. Gomez, 66 F.3d 199, 204

(9th Cir. 1995) ("'[c]onclusory allegations which are not supported by a statement of specific

facts do not warrant habeas relief'") (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994).

Further, under the circumstances presented by this case, counsel's efforts to convince petitioner

to accept the plea offer were clearly within the wide range of professional competent assistance.

Petitioner's allegations regarding inaccuracies in the police report lack a factual basis; his trial

counsel obtained an admission from Ms. Blackburn that she did not see petitioner put clothes

into a bag at the American Outpost store.  Finally, for the reasons described above, petitioner has

failed to establish that the result of the proceedings would have been different had counsel

objected on constitutional grounds to the admission of Alissa Tidwell's hearsay statements.

Because petitioner has failed to establish prejudice, he is not entitled to relief on his claim of

ineffective assistance of trial counsel.

        2.  Appellate Counsel

        Petitioner claims that his appellate counsel failed to conduct sufficient

investigation to uncover the following claims that should have been raised on appeal: (1) the

---

[11]  Petitioner concedes that counsel later informed petitioner there was no such videotape. (Id.)  Petitioner still declined to accept the plea agreement, which provided for a total prison term of seven years, later reduced to six years.  (Id.)

1   "false evidence/perjury by Sgt. Hood," (2) (the criminal history of Dewayne Saunders, (3) the

2   trial court's admission of prior crimes evidence, and (4) trial counsel's improper attempts to

3   convince petitioner to take "a seven year plea deal." (Traverse at 7.)  Petitioner also alleges that

4   his appellate counsel failed to obtain trial counsel's case file so that he could familiarize himself

5   with all possible meritorious claims.  (Id. at 20.)

6           Petitioner has failed to demonstrate prejudice, which in this context is a showing

7   that but for counsel's errors, petitioner would probably have prevailed on appeal.  This court has

8   analyzed petitioner's claim regarding the police report written by Sergeant Hood and his claim

9   that the trial court erred in admitting evidence of petitioner's prior uncharged bad acts.  As

10  discussed above, those claims lack merit.  Petitioner's vague and conclusory arguments regarding

11  Dewayne Saunders' criminal history, if any, and trial counsel's allegedly improper attempts to

12  convince petitioner to enter into a plea agreement, do not constitute meritorious claims that

13  should have been raised on appeal.  The court notes, in this regard, that counsel's advice to enter

14  into a plea agreement providing that petitioner would be sentenced to only seven years in prison

15  appears wise from the vantage point of hindsight.   Appellate counsel's decision to press only

16  those claims he believed had the most merit was within the range of competence demanded of

17  attorneys in criminal cases.  Accordingly, petitioner is not entitled to relief on this claim.

18          E.  Cruel and Unusual Punishment

19          Petitioner contends that his sentence of 50 years to life under California's Three

20  Strikes law constitutes cruel and unusual punishment because his crimes were not violent, did not

21  involve a large sum of money, and could have been prosecuted as misdemeanors.

22          In Andrade, the United States Supreme Court made clear that, in the context of an

23  Eighth Amendment challenge to a prison sentence, the "only relevant clearly established law

24  amenable to the 'contrary to' or 'unreasonable application of' framework is the gross

25  disproportionality principle, the precise contours of which are unclear and applicable only in the

26  'exceedingly rare' and 'extreme' case."  538 U.S. at 73 (citing Harmelin v. Michigan, 501 U.S.

21

957, 1001 (1991); Solem v. Helm, 463 U.S. 277, 290 (1983); and Rummel v. Estelle, 445 U.S. 263, 272 (1980)).  The Andrade Court concluded that two consecutive 25-years-to- life sentences with the possibility of parole, imposed under California's three-strikes law following two petty theft convictions with priors, did not amount to cruel and unusual punishment.  Id. at 77; see also Ewing v. California, 538 U.S. 11 (2003) (holding that a sentence of 25 years to life imposed for felony grand theft under California's three-strikes law did not violate the Eighth Amendment). "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare."  Rummel, 445 U.S. at 272.

In Ramirez v. Castro, 365 F.3d 755 (9th Cir. 2004), the United States Court of Appeals for the Ninth Circuit held, post-Andrade, that a three strike sentence of twenty-five years to life in prison for a third shoplifting offense, a "wobbler" under state law[12], constituted cruel and unusual punishment.  In Rios v. Garcia, 390 F.3d 1082 (9th Cir. 2004), the court of appeals distinguished Ramirez, finding that the petitioner in Rios had a "lengthy criminal history," had "been incarcerated several times," and because the strikes used to enhance the petitioner's sentence had "involved the threat of violence."  Id. at 1086.

The petitioner in this case has a lengthy criminal history that was described by the California Court of Appeal as follows:

> At age 35, [petitioner] had accumulated a record which included a 1984 attempted robbery conviction, a 1985 theft conviction, 1986 convictions for theft and battery arising out of the same incident, a 1987 first degree burglary conviction, 1991 convictions for possession of rock cocaine, drug paraphernalia, and a dangerous or deadly weapon, a 1992 conviction for being under the influence of a controlled substance, a 1993 conviction of theft with a prior theft conviction, a 1994 conviction for the same offense, and a 1997 conviction for the same offense.

The state appellate court concluded that even though petitioner's current offense was non-violent, his "excessive recidivism" justified the sentence imposed.

---

[12]  A "wobbler" is an offense that can be punished as either a misdemeanor or a felony under applicable law.  See Ferreira v. Ashcroft, 382 F.3d 1045, 1051 (9th Cir. 2004).

1    Under the circumstances presented here, this court finds that petitioner's sentence

2    does not fall within the type of "exceedingly rare" circumstance that would support a finding that

3    his sentence violates the Eighth Amendment.  The state courts' rejection of petitioner's Eighth

4    Amendment claim was neither contrary to, nor an unreasonable application of, controlling

5    principles of clearly established federal law.  This claim for relief should therefore be denied.

6    For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that

7    petitioner's application for a writ of habeas corpus be denied.

8    These findings and recommendations are submitted to the United States District

9    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

10   days after being served with these findings and recommendations, any party may file written

11   objections with the court and serve a copy on all parties.  Such a document should be captioned

12   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

13   shall be served and filed within ten days after service of the objections.  The parties are advised

14   that failure to file objections within the specified time may waive the right to appeal the District

15   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16   DATED: May 16, 2006.

18                              UNITED STATES MAGISTRATE JUDGE

21   008:mack1539.hc